United States District Court
Southern District of Texas
**ENTERED**
November 25, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | **2:12-CR-1034** |
| | § | **(2:14-CV-15)** |
| RUSSELL JAMES LONGORIA, | § | |
|     Defendant-Movant. | § | |

## MEMORANDUM OPINION & ORDER

Russell James Longoria (Longoria) filed his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 36.[1] The government filed a response and motion to dismiss. D.E. 42. Longoria filed a motion for leave to file a late reply, which the Court granted. D.E. 47, 48. No reply was filed.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Longoria made his initial appearance in this case on December 7, 2012. Initially he advised the Court he had retained counsel, but later requested appointed counsel. Counsel was appointed for him the same day. Longoria was indicted on December 20, 2012, for violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He was arraigned shortly thereafter. Longoria retained counsel in January 2013. The Court granted his request for continuance.

Trial began on March 11, 2013. The jury returned a guilty verdict the following day.

The Probation Department prepared the Presentence Investigation Report (PSR). Longoria's base offense level, calculated based on two prior convictions for crimes of violence, was 24. His offense level was increased by four because he possessed the firearm in connection with another felony, evading arrest with a vehicle. In addition, Longoria qualified as an armed career criminal,

---

[1] Docket entry numbers (D.E.) refer to the criminal case.

1

which increased his total offense level from 28 to 34. Longoria had 12 criminal history points, resulting in application of criminal history category V, but because he qualified as an armed career criminal, his criminal history category was increased to VI. The guideline range of imprisonment was calculated to be 262 to 327 months, with a mandatory minimum sentence of 15 years.

At sentencing on August 20, 2013, defense counsel raised no objections to the PSR. The government moved for a downward departure for Longoria. The Court inquired whether Longoria's offense level should be 33 or 34, because he did not use the gun during the evading arrest, but rather attempted to get rid of the gun before the traffic stop. That change reduced Longoria's total offense level to 33 and his criminal history to a Category V, which reduced his guideline sentencing range to 210 to 262 months' imprisonment. The Government recommended a further reduction to a sentencing range of 188 to 235 months. The Court imposed a low end guideline sentence of 188 months' imprisonment, five years supervised release, and a $100 special assessment. Longoria was advised of his right to appeal.

Judgment was entered on the docket on August 21, 2013. Longoria did not appeal. The Clerk received Longoria's motion to vacate, set aside, or correct sentence on January 13, 2014. It is timely.

## II. MOVANT'S ALLEGATIONS

Longoria raises several claims of ineffective assistance of counsel: (1) counsel failed to challenge his designation as an Armed Career Criminal; (2) counsel did not tell him he could appeal; (3) counsel did not give him a chance to review "any of my paperwork and he didn't explain anything about my PSI . . . ;" (4) counsel failed to argue that burglary of a habitation pursuant to § 30.02(a)(3) does not qualify as a predicate offense for armed career criminal; (5) counsel failed to argue that his two prior convictions for burglary of a habitation were run concurrently and should only count as a single conviction; and (6) counsel failed to notice that one of his predicate crimes

involved a knife and not a firearm, such that it should not count for purposes of the armed career criminal finding.

### III. ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.     Claims of Ineffective Assistance of Counsel**

  **1.  Standard for ineffective assistance of counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in

3

the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**2. Defense counsel's failure to challenge predicate offenses**

Longoria qualified for the enhanced penalty of 18 U.S.C. § 924(e) (Armed Career Criminal Act or ACCA), which increases the statutory maximum sentence of 10 years to a statutory *minimum* of 15 years when a defendant has previous qualifying drug trafficking or violent felony convictions.[2] Longoria argues that his prior criminal convictions do not qualify as predicate offenses for purposes of the ACCA. The sentencing guidelines for ACCA are found at § 4B1.4 of the Sentencing

---

[2] The pertinent portions of § 924 are:

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).
    (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
        (i) *has as an element the use, attempted use, or threatened use of physical force against the person of another*; or
        (ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; . . . .

*Id*. (emphasis added).

4

Guideline Manual.[3]

During sentencing, the Court determined that Longoria's possession of the firearm fit within § 4B1.4(b)(3)(B), and his criminal history would change pursuant to § 4B1.4(c)(1). Longoria's predicate convictions were: (1) a 2006 burglary of a habitation pursuant to § 30.02 of the Texas Penal Code, Cause No. 05-CR-3359; (2) a 2006 burglary of a habitation pursuant to § 30.02 of the Texas Penal Code, Cause No. 04-CR-2514; and (3) a 2007 aggravated robbery pursuant to § 29.03 of the Texas Penal Code, Cause No. 07-CR-604. Longoria claims his burglaries do not count as predicate convictions because they were not violent, and if they do count, they should only count once. He claims his aggravated robbery conviction should not count because it did not involve a firearm, but a knife.

### a. Burglary convictions

Although Longoria was convicted of two burglaries in 2006, the burglaries were committed on different dates. Longoria argues in part that neither qualifies as a predicate conviction under the

---

[3] (a) A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.
(b) The offense level for an armed career criminal is the greatest of:
  (1) the offense level applicable from Chapters Two and Three; or
  (2) the offense level from § 4B1.1 (Career Offender) if applicable; or
  (3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. 5845(a); or
    (B) 33, otherwise.
(c) The criminal history category for an armed career criminal is the greatest of:
  (1) the criminal history category from Chapter Four, Part A (Criminal History), or § 4B1.1 (Career Offender) if applicable; or
  (2) Category VI, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or
  (3) Category IV.

USSG. § 4B1.4 (2012).

5

ACCA.

Longoria committed one of the burglaries on October 2, 2005, Cause No. 05-CR-3359. Although the Judgment does not state the subsection of the burglary statute applicable, the Court has available to it the indictment which alleges that Longoria, "on or about October 2, 2005, in Nueces County, Texas, did then and there with the intent to commit theft, enter a habitation without the effective consent of [victim], the owner thereof . . . ." D.E. 30, p. 7. Longoria's judicial confession admitted those same facts as alleged.

In Cause No. 04-CR-2514, the burglary was committed on July 16, 2004. The Judgment does not specify the subsection of the burglary statute applicable. The indictment recites that "Russell Longoria on or about July 16, 2004, in Nueces County, Texas, did then and there with the intent to commit THEFT, enter a habitation without the effective consent of [victim], the owner thereof . . . ." *Id*., p. 30.

The definition of "violent felony" for the ACCA includes, in the part relevant to this case, a crime that "is burglary, arson, or extortion, involves use of explosives . . . ." § 924(e)(2)(B)(ii). The Texas burglary statute includes several subparts, some of which fit within the generic definition of burglary and one portion that does not. *See United States v. Constante*, 544 F.3d 584 (5th Cir. 2008). In Texas, a person commits burglary if, "without the effective consent of the owner, that person either 'enters a habitation, or a building (or any portion of a building) not then open to the public, with the intent to commit a felony, theft, or an assault,'" TEX. PENAL CODE § 30.02(a)(1), or "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." TEX. PENAL CODE § 30.02(a)(3). A violation of subsection 30.02(a)(1) is a generic burglary. *Constante*, 544 F.3d at 585-86. A conviction for violation of § 30.02(a)(3) is not. *Id*. at 587.

6

Because the documents of conviction do not identify the portion of the Texas burglary statute that Longoria was convicted under, the Court must undertake an examination of permissible court documents to determine the proper statutory subsection. Those documents include "the statutory definition, charging documents, written plea agreement, transcript of plea colloquy, and any explicit factual findings by the trial judge to which the defendant has assented." *Id*. at 585 (quoting *Shepherd v. United States*, 544 U.S. 13, 16 (2005)).

After examining Longoria's indictments, judgments, and judicial confessions, the Court finds that the language in Cause Nos. 05-CR-3359 and 04-CR-2514 tracks the language of § 30.02 (a)(1) and thus qualifies both convictions as generic burglaries and as violent predicate felonies pursuant to the ACCA. Defense counsel had no basis to object to their use as predicate offenses, and his conduct in failing to object does not constitute ineffective assistance of counsel.

### b. Longoria's burglaries should only be counted once

Next, Longoria claims that his 2006 burglary convictions were sentenced at the same time and run concurrently, such that they should be counted only once, if at all. In Cause No. 04-CR-2514, the crime was committed on July 16, 2004. Longoria was sentenced on March 6, 2006, to 3 years imprisonment at TDCJ, to run concurrently with his sentence for two other burglaries, 05-CR-3358 and 05-CR-3359. The other burglaries both took place on October 6, 2006. The Guidelines Manual states that in computing criminal history, "prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . . ." In Longoria's case, he was first arrested on July 16, 2004, released on bond, and then committed the October 2, 2005, burglaries and was again arrested. These offenses are properly counted separately pursuant to § 4A1.2(a)(2). Longoria has not established any factual basis for the objection he claims

7

counsel should have made. This issue fails.

### c. Longoria's robbery did not involve a firearm

The Texas aggravated robbery conviction used as a predicate violent felony was committed on February 21, 2007. The Indictment charged Longoria in two counts with intentionally and knowingly threatening two victims "by using and exhibiting a deadly weapon, namely a knife, which in the manner of its use and intended use was capable of causing death and serious bodily injury . . . ." *Id.*, p. 23. The Court made a deadly weapon finding in the Judgment. Longoria's judicial confession tracked the language of the indictment.

"Aggravated robbery constitutes a violent felony within the meaning of § 924(e)(2)(B) . . . ." *United States v. Guardiola*, 236 Fed. App'x 93, 95 (5th Cir. 2007) (per curiam) (designated unpublished); *see also United States v. Fannin*, 94 Fed. App'x 234 (5th Cir. 2004) (per curiam) (designated unpublished) (Texas aggravated robbery is a predicate offense for ACCA). The Texas robbery statute provides:

> (a) A person who commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX. PEN. CODE § 29.02. A robbery becomes aggravated when:

> (a) A person commits an offense if he commits robbery as defined in Section 29.02, and he:
> (1) causes serious bodily injury to another;[or]
> (2) uses or exhibits a deadly weapon . . . .

TEX. PEN. CODE § 29.03. Aggravated robbery pursuant to § 29.03 "has as an element the use, attempted use, or threatened use of physical force against the person of another," as required for a

predicate offense. 18 U.S.C. § 924(e)(1)(B)(i). Longoria's claim that his aggravated robbery conviction does not qualify as a predicate crime under the ACCA is without merit.

### 3. **Counsel failed to give Longoria a chance to review his paperwork and PSR**

Longoria argues that counsel failed to allow him to review his paperwork and his PSR. Longoria cites no specifics as to which paperwork or when the alleged omissions took place. Moreover, during sentencing, Longoria testified that he had reviewed the PSR with counsel before sentencing. The transcript reflects the following:

> 10 After you were found guilty by the jury, I ordered a
> 11 presentence investigation report to be prepared. One of our
> 12 local officers prepared the report and delivered it to Mr. Berg.
> 13 Have you had a chance to review that report with him before
> 14 stepping up here to be sentenced?
> 15 THE DEFENDANT: Yes, Your Honor.

D.E. 43, p. 2.

During the evidentiary hearing on November 18, 2015, Longoria testified that he never saw his PSR until long after sentencing, after he was moved to the Bureau of Prisons. Longoria's claim regarding his PSR is contradicted by his sentencing testimony. The Court did not find Longoria's recent testimony to be credible, in part because Longoria testified that he did not understand what report the Court referenced in its inquiry at sentencing. He has not met his heavy burden to overcome the presumption that counsel rendered reasonably effective assistance.

### 4. **Failure to consult with Longoria regarding his right to appeal**

As part of his first ground of relief, Longoria contends that his counsel did not explain to him that he could appeal, he did not know how to appeal, and he and his family called and wrote to counsel, but counsel did not respond. During sentencing, this Court advised Longoria of his right

to appeal, his right to appointed counsel for appeal and Longoria testified he understood that right.[4]

To address Longoria's claim, this Court appointed the Federal Public Defender to represent Longoria and held an evidentiary hearing on November 18, 2015. The only witnesses were Longoria and his former counsel.

Counsel Robert Armand Berg testified that he has been practicing law in federal court since 1975. He practices in both state and federal court. Counsel is well known to the Court as a criminal practitioner who is a former AUSA. Berg could not find Longoria's file, although he remembered Longoria. Berg was first hired to represent Longoria in a state criminal prosecution in which Longoria went to trial and was acquitted. During the course of that prosecution, Longoria's mother telephoned Berg and came by his office on a regular basis. A few months later, Longoria was charged in federal court. At the beginning of Longoria's federal prosecution, Longoria's mother continued to drop by and call until Berg agreed to represent Longoria. After that, Longoria's girlfriend stayed in touch with Berg.

Berg recalled that Longoria never considered pleading guilty and did not want to do any time on either the state or federal prosecution. After a two-day trial in federal court, the jury convicted Longoria of being a felon in possession of a firearm. Longoria was sentenced to 188 months as an Armed Career Criminal.

According to counsel, his practice is to visit his client in the holding cell immediately after sentencing to discuss the sentence imposed and to discuss the right to appeal, "keying off" the

---

[4]   6 THE COURT: I advise you that you have the right to
     7 appeal your conviction and your sentence, and if you are unable
     8 to hire a lawyer, the Court will appoint one for you. Do you
     9 understand that you have that right?
     10 THE DEFENDANT: Yes, Your Honor.
D.E. 43, p. 18.

district court's explanation. When Berg saw Longoria after sentencing, Longoria gave him the impression he was disinclined to appeal but did not express with certainty one way or the other. Berg explained the time frame to Longoria, told Longoria that he would not handle the appeal, and that he did not think an appeal was likely to be successful. Berg has done some federal appeals, although he prefers not to handle appeals. He has also helped a number of his clients file notices of appeal. He prepares a pro se notice for the client to sign and mail if he is asked to do so. He has never refused to prepare a notice of appeal for a client who wanted to appeal. Neither Longoria nor his family or girlfriend called or wrote Berg about filing a notice of appeal or wanting to appeal after sentencing. At the time of Longoria's representation by Berg, Berg had a secretary and checked with her on a daily basis for his messages. He did not make a note in his file in regard to his discussion with Longoria about an appeal. Berg looked for the file but did not find it. He has no idea where Longoria's file is because he has moved and changed secretaries.

Longoria testified that after the jury found him guilty, he had it in his mind to appeal the guilty verdict, but he did not discuss that with Berg. Longoria said that he didn't really understand his right to appeal as the Court explained it; he thinks he was in shock due to his sentence. He admits that he and Berg met in the holding cell after sentencing, but the meeting was very short and they did not discuss Longoria's appeal rights. Instead, according to Longoria, counsel explained that Longoria could file a § 2255 motion and complain that counsel was ineffective to get back to court. Longoria further testified that once he got back to the detention center, other inmates told him he should appeal and the time to do so was short. Longoria testified that he mailed a letter to the undersigned explaining that he wanted to appeal, but counsel would not return his phone calls. Longoria claimed that his mother and girlfriend called Berg, but Berg did not answer his phone.

Longoria also testified that his mother spoke to Berg once, about 10 days after sentencing, and counsel told her it was too late to appeal. Berg denied speaking to Longoria's mother after sentencing.

The Court's docket reveals that sentencing was held on August 13, 2013; judgment was entered on August 23, 2013; and nothing was filed on the docket until January 23, 2014, when Longoria filed his present motion. Any pro se letters received by the Clerk that mention an appeal are treated as notices of appeal and docketed as a matter of routine practice.

The Court find's Berg's testimony regarding the subject of his and Longoria's conversation in the holding cell to be credible. Berg testified that his practice for over 40 years has been to discuss appellate rights with his client in the holding cell immediately after sentencing. The Court finds Longoria's testimony not credible on several issues: (1) Longoria's claim that he wrote to this Court; (2) Longoria's girlfriend and his mother were unable to reach Berg or his secretary; and (3) Longoria's explanation that he did not understand questions put to him by the Court during sentencing.

When a defendant has not instructed counsel whether to file a notice of appeal, the inquiry becomes whether counsel's failure to consult with a defendant regarding an appeal constituted deficient performance. "That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?" *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making

12

> a reasonable effort to discover the defendant's wishes. . . .If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id*. The *Roe* court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either: (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. "The defendant complaining that counsel failed to file an appeal must show that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*.

Longoria has not met his burden to establish that counsel failed to consult with him about an appeal. Additionally, Longoria has provided no evidence that, but for counsel's alleged failure to consult with him, he would have appealed.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Longoria has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Longoria is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V. CONCLUSION

For the foregoing reasons, Longoria's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 36) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 24th day of November, 2015.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

14